**Joseph D. WODDAIL and Susan M. Woddail, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 7287.

United States Court of Appeals
Tenth Circuit.

Aug. 13, 1963.

Robert F. Roeser, Atlanta, Ga., for petitioners.

Harold C. Wilkenfeld, Atty., Dept. of Justice (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Earl J. Silbert, Attys., Dept. of Justice, were with him on the brief), for respondent.

Before PICKETT, BREITENSTEIN and HILL, Circuit Judges.

HILL, Circuit Judge.

This is a petition to review a decision of the Tax Court of the United States [1] which was adverse to the petitioners. The sole question presented is whether any part or all of the amount paid to the taxpayer, Joseph D. Woddail, while he was employed as a full-time physician in the Winter Veterans Administration Hospital, Topeka, Kansas,[2] was excludable from gross income as a "fellowship grant" under § 117 of the Internal Revenue Code of 1954, 26 U.S.C. § 117.

On July 1, 1955, Woddail, a licensed medical doctor, entered into the employ of the Hospital at Topeka, Kansas, with a civil service classification of "physician". In addition to the performance of the duties of a resident physician at the Hospital, it was agreed that Woddail would receive residence training in neurology and psychiatry. To make such training available to its residents, the Veterans Administration [3] had contracted with the Menninger Foundation [4] at Topeka to provide the professional services necessary for the operation and maintenance of such a course of instruction. The cost of such instruction was paid for by the VA direct to the Foundation. VA had the ultimate authority under the contract to determine the nature of the instruction and training to be furnished by the Foundation. The contract also required

1. Joseph D. Woddail T. C. Memo 1962–232.

2. Hereinafter referred to as Hospital.

3. Hereinafter referred to as VA.

4. Hereinafter referred to as Foundation.

the instruction and training furnished by the Foundation to be such as to meet the requirements of both the VA and the American Board of Psychiatry and Neurology, and when completed by a resident, to entitle him to certification by the latter. Also upon the completion of this special training, the Foundation issues to the resident a certificate attesting to such completion. The resident is not considered to be a candidate for a degree and none is conferred.

It is also agreed by the parties that the Hospital facility is maintained primarily for the treatment of patients. A resident normally works six days a week from 8:00 A.M. to 4:30 or 5:00 P.M. He devotes approximately eight hours per week to instruction courses given by the Foundation, with his remaining work time spent at the Hospital where one-third to one-half of the day is spent on didactic and clinical instruction, and the remaining part of the day devoted to clinical work.

Woddail's written application for employment, which constituted the employment contract also contained the following material provisions: VA agreed to pay Woddail a regular salary, the same to be dependent upon his civil service classification and the appropriate and effective regulations; VA agreed that there would be no deduction in salary because of the time spent in pursuing his training with the Foundation; and both parties agreed that the period of training was to be one year, two years or three years, and for each year of training Woddail became obligated to remain in such employment for a specified time.

A resident receiving payments from the VA of the type here in question may be assigned to one or more of several affiliated institutions for training available at a VA hospital and the VA retains responsibility for his training, which training may not exceed one-third of the residency period and is based upon the needs and requirements of the VA. The resident must accept the assignment to an affiliated program made by the VA or terminate his residency. A resident at the Hospital accumulates annual and sick leave; deductions are made by the VA from payments to him as income tax withheld at the source; and the Hospital charges the payments made to residents to the same account as salaries paid to staff physicians, but sometimes refers to them as "stipends" rather than "salaries".

Woddail was engaged in this residence program for a total of 5 years, which consisted of 3 years of training and service status and 2 years of obligated service. He combined residency training with staff experience as required for certification by the Board and, immediately upon completing the 5 year service, resigned from the VA. For the period from July 1, 1955, through December 31, 1955, Woddail was paid the sum of $3,535.40. He excluded $1,800.00 ($300 per month for the 6 months) of this amount from his gross income as a tax-exempt fellowship. The respondent, Commissioner of Internal Revenue,[5] disallowed the exemption and assessed a deficiency against Woddail.[6]

Beyond question, the $3,535.40 paid to Woddail by the VA comes within the all-inclusive definition of "gross income" as that term is used in § 61 of the 1954 Code, 26 U.S.C. § 61, and was taxable to him unless it could be excluded therefrom by virtue of § 117 of the 1954 Code. It is also clear that the taxpayer, not being a candidate for a degree at an educational institution, was not the re-

---

5. Hereinafter referred to as Commissioner.

6. The Tax Court in upholding the deficiency assessment stated:
   "A factual situation almost identical to that here involved was before this Court in the case of Ethel M. Bonn, 34 T.C. 64. It was there held that the entire amount received by the taxpayer from the Veterans Administration constituted compensation for services rendered and, therefore, was not excludable from gross income as a fellowship grant under the provisions of section 117 of the Internal Revenue Code of 1954. We will follow that opinion."

cipient of a "scholarship" such as would be excludable under § 117(a) (1) (A). Therefore, the amount paid to him by the VA could be excluded from his gross income only if he received it as a "fellowship grant" within the meaning of § 117(a) (1) (B), providing for such an exclusion. This exclusion, itself, is limited in the case of an individual who is not a candidate for a degree by § 117(b) (2), which provides that the "fellowship grant" is exempt only if the grantor of it is an exempt charitable organization as described in § 501(c) (3) of the 1954 Code, 26 U.S.C. § 501(c) (3), or a Governmental organization, and, then, the amount excluded may not exceed $300 per month for a maximum of 36 months. There is no question raised here with respect to the fulfillment of these two conditions or limitations.

A "fellowship grant" is defined in Treas. Reg. § 1.117–3(c) (1956) [7] as "an amount paid or allowed to, or for the benefit of, an individual to aid him in the pursuit of study or research * *." Both parties agree that this definition is a correct interpretation of the Congressional intent in enacting § 117(a) (1) (B).

■ However, despite this definition or, perhaps, because of it, petitioners contend here, as they did in the Tax Court, that they were entitled to exclude from gross income as a "fellowship grant" the maximum of $300 per month for 6 months, or $1,800, out of the total amount paid by the VA. In support of this contention, they first argue that Treas. Reg. § 1.117–4 (1956),[8] which the Commissioner relied upon in disallowing the claimed exclusion, is invalid because it is in conflict with the legislative intent of § 117. This same argument was made and rejected in a case where the taxpayer was a candidate for a degree, Ussery v. United States, 5 Cir., 296 F.2d 582, and in a case where the taxpayer was not a candidate for a degree, Frank Thomas Bachmura, 32 T.C. 1117. We are unable to find any valid distinction between those cases and this case. Petitioners' first argument is therefore without merit.

■ Petitioners next argue that if the regulation is valid then the Tax Court erred in holding that the Commissioner correctly applied it in this case. The argument is that the conditions set forth in the last paragraph of the regulation were fulfilled since the primary purpose

7. 1954–1960 Regulations, Mertens Law of Federal Income Taxation, § 1.117–3, pp. 252–253.

8. "Items Not Considered as Scholarships or Fellowship Grants. The following payments or allowances shall not be considered to be amounts received as a scholarship or a fellowship grant for the purpose of section 117:
* * * * *
"(c) Amounts paid as compensation for services or primarily for the benefit of the grantor.
(1) Except as provided in section 1.-117–2(a), any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research, if such amount represents either compensation for past, present, or future employment services or represents payment for services which are subject to the direction or supervision of the grantor.
(2) Any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research primarily for the benefit of the grantor.
However, amounts paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research are considered to be amounts received as a scholarship or fellowship grant for the purpose of section 117 if the primary purpose of the studies or research is to further the education and training of the recipient in his individual capacity and the amount provided by the grantor for such purpose does not represent compensation or payment for the services described in subparagraph (1) of this paragraph. Neither the fact that the recipient is required to furnish reports of his progress to the grantor, nor the fact that the results of his studies or research may be of some incidental benefit to the grantor shall, of itself, be considered to destroy the essential character of such amount as a scholarship or fellowship grant." (1954–1960 Regulations, Mertens Law of Federal Income Taxation, § 1.117–4, pp. 253–254.)

of Woddail's residency training was the furtherance of his training and education, and was not conducted by him primarily for the benefit of the grantor, i. e., the VA. Petitioners buttress this argument by pointing out that Woddail gave up a lucrative medical practice to study psychiatry for a "stipend" of about $7,100 per year and that, as soon as he had completed the requirements for a certificate in psychiatry, he resigned from the VA. They also assert that the Tax Court erred in following its previous decision, Ethel M. Bonn, 34 T.C. 64, as that case is distinguishable on the facts from this one and that, in any event, the Bonn case is incorrect and should be overruled.

Petitioners' argument overlooks the stipulated facts, the Tax Court's findings and other pertinent provisions of Treas. Reg. § 1.117–4(c). That regulation clearly provides that any amount or amounts paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research shall not be considered to be an amount received as a "fellowship grant" for the purpose of § 117: (1) If such amount represents either compensation for past, present or future employment services or represents payment for services which are subject to the direction or supervision of the grantor; or (2) if such studies or research are primarily for the benefit of the grantor. These two conditions are restrictions upon the definition of a "fellowship grant" and, when present, negate the existence thereof. In this connection, the Tax Court, following its decision in the Bonn case, determined that the entire amount received by Woddail from the VA constituted compensation for services rendered and therefore under the regulation was not excludable from gross income. This court is not at liberty to set aside that factual determination unless it is clearly erroneous and it is clearly erroneous only "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Commis-

sioner v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 1200, 4 L.Ed.2d 1218.

We think there is ample support in the record for the Tax Court's determination. The contract itself provides that Woddail was to be employed by the VA as a "full-time physician" and "While in the employ of the Veterans Administration as aforesaid I shall be paid the regular salary of a full-time physician in the grade at which I am assigned." He was employed under the civil service classification of "physician", deductions for income tax were made from his monthly "salary" or "stipend" and he accumulated annual and sick leave. Woddail's instruction and training were under the complete control of the VA, which made the payments to him, and he performed regular daily services at the Hospital for the VA. It is difficult to imagine a more perfect example of an employer-employee relationship.

Moreover, it was stipulated that the primary purpose of the Hospital was the care and treatment of patients and the Tax Court expressly found that the adoption of the resident trainee program and the appointment of persons such as Woddail to the residencies was for the purpose of facilitating that care and treatment. In other words, the instruction and training was primarily for the benefit of the VA in operating the Hospital. Thus, the amount paid to Woddail by the VA falls squarely within both restrictions, i. e., it was an amount paid for services and was primarily for the benefit of the grantor. As such, it was not excludable from his gross income. We think the Bonn case is not distinguishable from this one and is a correct statement of the law.

Lastly, petitioners assert that if the entire amount is not a "fellowship grant" then the portion of such amount paid to Woddail in proportion to the time spent receiving instruction and training as compared with the time spent in supervised clinical work at the Hospital should be excludable under § 117. In other words, they argue that at least a portion of the amount received from the VA con-

stitutes a "fellowship grant" and an allocation should be made for the time spent in receiving instruction and training. The Tax Court completely answered this proposition by stating that "What the petitioner fails to realize is that until the existence of a scholarship or fellowship grant has been established, no allocation is possible. Since we think there is no ground for concluding that a scholarship or fellowship grant was made by the VA to the petitioner, we find that no allocation is justified."

We conclude that the amount in question was not received as a fellowship grant within the meaning of § 117 of the 1954 Code, and therefore no part of it was excludable from gross income.

Affirmed.