Eugene E. HEMBREE, Jr., and Belle D.
Hembree, Appellees,

v.

UNITED STATES of America,
Appellant.

No. 71-2152.

United States Court of Appeals,
Fourth Circuit.

Argued May 11, 1972.

Decided Aug. 3, 1972.

Carolyn R. Just, Atty., Tax Division, Dept. of Justice (Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Elmer J. Kelsey, Attys., Dept. of Justice, John K. Grisso, U. S. Atty., and Robert G. Clawson, Asst. U. S. Atty., on the brief), for appellant.

George C. Evans, Charleston, S. C. (Charles F. Ailstock, and Sinkler, Gibbs, Simons & Guerard, Charleston, S. C., on the brief), for appellees.

Before HAYNSWORTH, Chief Judge, and WINTER and FIELD, Circuit Judges.

FIELD, Circuit Judge:

The issue presented on this appeal is whether certain payments received by Eugene E. Hembree, Jr.[1] during his in-

---

1. Belle D. Hembree is a party to this appeal solely because she and her husband filed joint income tax returns.

ternship and a portion of his residency at the Medical College of South Carolina were excludable from gross income as a fellowship within the meaning of section 117 of the Internal Revenue Code of 1954.[2] The district court determined that such amounts received constituted a fellowship grant and ordered a refund of federal income taxes and interest.

Dr. Hembree, in June, 1966, received a Doctor of Medicine degree from the Medical College of South Carolina, now the Medical University of South Carolina (hereinafter referred to as MCSC). On July 1, 1966, taxpayer began his internship at the MCSC Hospital, which continued for one year, immediately after which he became a resident in obstetrics and gynecology at the same hospital. The program for interns and residents at the MCSC Hospital involves a rotation among three hospitals, namely, the MCSC Hospital, the Veterans Administration Hospital, Charleston (hereinafter referred to as VA Hospital), and the Charleston County Hospital. During his internship, Dr. Hembree spent four months at the VA Hospital, seven months at the MCSC Hospital and one month at the County Hospital. From July to December, 1966, taxpayer received $1,434.06 from the MCSC Hospital and $358.67 from the VA Hospital, or a total of $1,792.73; and in 1967, he received $3,273.07 from the MCSC Hospital and $1,029.73 from the VA Hospital, or a total of $4,302.80. The original suit for refund claimed that $1,792.73 received in 1966 and $3,600 of the amount received in 1967 were excludable under Section 117.[3]

Under the rotational plan there were no differences between the taxpayer's duties and his relationship to the VA Hospital and the MCSC Hospital. The interns and residents of both hospitals were paid every two weeks and the pay scale at the VA Hospital was keyed to that at the MCSC Hospital, the salaries at the former being slightly higher to compensate for benefits provided by MCSC which were not provided by the VA. During the years in question the taxpayer was paid by the hospital where he currently worked and income taxes were withheld and W–2 Forms issued showing the withholdings. After a year of service the interns and residents of the VA and MCSC were granted two weeks annual leave with no salary deduction, and during their service they were provided with free uniforms and laundry service and entitled to participate in the group health insurance program of the MCSC Hospital employees.

Although is was undisputed that under the rotational system the educational pattern of Dr. Hembree embraced all three hospitals, the district court had no difficulty in concluding that the amounts received by the taxpayer from the VA Hospital and the County Hospital did not qualify as a fellowship grant but represented compensation for services performed. The court made this determination upon its finding that both the VA and County Hospitals were established for the primary purpose of providing medical services to discharged veterans and other patients. However, the court concluded that the payments made to Dr. Hembree by MCSC quali-

---

2. Internal Revenue Code of 1954 (26 U.S.C.):

"§ 117. *Scholarships and fellowship grants*

(a) *General rule.*—In the case of an individual, gross income does not include—

(1) any amount received—

(A) as a scholarship at an educational institution (as defined in section 151(e) (4), or

(B) as a fellowship grant, including the value of contributed services and accommodations; * * *"

3. Since Dr. Hembree was not a candidate for a degree, the amount received as a fellowship excludable from gross income cannot exceed an amount equal to $300 times the number of months for which the recipient received the fellowship grant during the taxable year. Internal Revenue Code of 1954 § 117(b) (2).

fied as a nontaxable fellowship grant since they were made for the primary purpose of furthering his education and training and did not represent compensation for services. This conclusion of the district court was based upon its finding that the primary purpose of MCSC Hospital was the training of physicians rather than the treatment of patients. In support of this finding, the court placed considerable emphasis upon legislation of the General Assembly of the State of South Carolina which authorized the issuance of bonds to purchase land "to be used by the Medical College of South Carolina as a site for a teaching hospital."[4] The court also relied upon the language of the Charter of the Medical College which states in substance that it was established for the purpose of training physicians.[5]

In reaching its decision with respect to the payments received from MCSC the court below applied the so-called "primary purpose" test, citing Reese v. Commissioner of Internal Revenue, 373 F.2d 742 (4 Cir. 1967), aff'g. per curiam 45 T.C. 407 (1966). This test emanated from the Regulations promulgated by the Commissioner to implement Section 117, particularly Treasury Regulation 1.-117 which provides in pertinent part as follows:

"§ 1.117–4 *Items not considered as scholarship or fellowship grants.*

The following payments or allowances shall not be considered to be amounts received as a scholarship or a fellowship grant for the purpose of section 117:

\* \* \* \* \* \*

(c) *Amounts paid as compensation for services or primarily for the benefit of the grantor.*

(1) Except as provided in paragraph (a) of § 1.117–2, any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research, if such amount represents either compensation for past, present, or future employment services or represents payment for services which are subject to the direction or supervision of the grantor.

(2) Any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research primarily for the benefit of the grantor. However, amounts paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research are considered to be amounts received as a scholarship or fellowship grant for the purpose of section 117 if the primary purpose of the studies or research is to further the education and training of the recipient in his individual capacity and the amount provided by the grantor for such purpose does not represent compensation or payment for the services described in subparagraph (1) of this paragraph. \* \* \* \*"

■■ On the facts of this case, however, we conclude that the district court erred in using the primary purpose of the hospital facility as the criterion for the test enunciated in the Regulations. It is not the purpose of the facility to which the Regulation refers but the primary purpose of the payment made to the taxpayer that is controlling. In Reese v. Commissioner of Internal Revenue, *supra,* this court upheld the tax court's conclusion that "the primary purpose test requires a determination of the *raison d'etre* of the payment." The arrangements under which Dr. Hembree served that portion of his internship and residency at MCSC had all of the indicia of an employer-employee relationship, and differed in no material respect from his service at the VA and County Hospitals. Witnesses, including the taxpayer, testified that the interns and residents performed valuable services for MCSC, and without them the hospital would have found it necessary to hire other

4. Act 920, v. 45, S.C. Statutes at Large, p. 2430.

5. Act 2580, v. 8, S.C. Statutes at Large, p. 379.

doctors to carry on its medical programs. Clearly, the *raison d'etre* of the payments from MCSC to Dr. Hembree was to compensate him for services performed for it. Under these circumstances, the fact that the institutional purpose of MCSC differed from the VA and County Hospitals is immaterial.

There is another and more compelling reason for holding the subject payments taxable. The regulations require that in order to qualify for exclusion the payments must be made for the primary purpose of furthering the education and training of the recipient, and, additionally, the amount provided for such purpose shall not represent compensation or payment for services. In considering and sustaining the validity of Treasury Regulation 117–4(c) in Bingler v. Johnson, 394 U.S. 741, 89 S. Ct. 1439, 22 L.Ed.2d 695 (1969), the Supreme Court bypassed discussion of the "primary purpose" dialogue and bluntly stated that "the definitions supplied by the Regulation clearly are prima facie proper, comporting as they do with the ordinary understanding of 'scholarships' and 'fellowships' as relatively disinterested, 'no-strings' educational grants, with no requirement of any substantial *quid pro quo* from the recipients." The clear import of this language is that if there is any substantial *quid pro quo*, i. e., compensation for services, the payments cannot qualify for exclusion from income as "fellowship" funds. In the wake of *Bingler*, the courts have uniformly held that payments such as those here under consideration are not excludable. See Wertzberger v. United States, 441 F.2d 1166 (8 Cir. 1971), aff'g. 315 F.Supp. 34 (W.D.Mo.1970); Quast v. United States, 428 F.2d 750 (8 Cir. 1970), aff'g. 293 F.Supp. 56 (D.C.Minn. 1968); Tobin v. United States, 323 F. Supp. 239 (S.D.Tex.1971); Kwass v. United States, 319 F.Supp. 186 (E.D. Mich.1970).

We conclude, therefore, that the payments received by Dr. Hembree from MCSC represented compensation for services performed and, accordingly, were not excludable as a fellowship grant under section 117.

Reversed.