JAMES W. and JOYCE A. BEAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bean v. Commissioner
Docket No. 2811-75.
United States Tax Court
T.C. Memo 1977-271; 1977 Tax Ct. Memo LEXIS 165; 36 T.C.M. (CCH) 1094; T.C.M. (RIA) 770271; August 16, 1977, Filed *165 Held, the stipend petitioner received was not a "scholarship" or "fellowship grant" under section 117(a)(1), I.R.C. 1954. James W. Bean, pro se. J. Michael Adcock, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a deficiency of $342.75 in petitioners' 1971 income tax. The sole issue is whether payments received by James W. Bean, while serving as a resident physician, constitute a scholarship or fellowship grant within the meaning of section 117. [1] If so, he may exclude a portion of the payments from income pursuant to section 117(a)(1). FINDINGS OF FACT Some of the facts were stipulated and are found accordingly. James W. Bean (hereinafter petitioner) and Joyce A. Bean, husband and wife, lived in Little Rock, Arkansas, when they timely filed their 1971 income tax return, and *167 in Dayton, Ohio, when they filed their petition in this case. Upon completion of medical school and an internship, petitioner entered the resident physician program of the University Hospital at the University of Arkansas Medical Center (hereinafter UAMC). Petitioner served the first half of 1971 in a general surgery residency and the second half of that year in an otolaryngology residency. The otolaryngology residency was renewed for two succeeding one-year terms and petitioner was thereafter certified by the American Board of Otolaryngology. Petitioner was not a candidate for a degree. University Hospital is owned and operated by the University of Arkansas[2] in conjunction with UAMC. During 1971, the hospital treated 90,511 patients on an outpatient basis. Of this number, 6,219 patients were seen by the general surgery department and 2,418 were seen by the otolaryngology department. In 1971, the otolaryngology department was staffed by *168 four residents, including petitioner. Petitioner worked 65 hours a week at the hospital and was on call every third evening. Petitioner's testimony establishes that in a normal week he spent 8 hours in surgery, 12 hours in outpatient clinic, 15 hours in educational conferences, 3 hours in preparation for conferences in which he was required to give a lecture, and 6 hours in teaching medical students. Petitioner spent the remaining portion of his time "on call" and studying for otolaryngology certification. While at the hospital, petitioner provided extensive supervised patient care of the type traditionally performed by practicing physicians. The department could not have adequately treated the same number of patients without the services of all four resident physicians. Consequently, had the otolaryngology residency program been eliminated, the hospital would have been required to employ additional staff. The residency appointments provided petitioner uniforms, professional liability and hospitalization insurance, outpatient health care, supervised instruction leading to certification, and an annual stipend. Petitioner's stipend was $6,300 for his general surgery residency *169 and $7,100 for the first term of his otolaryngology residency. The amount of the stipend was the same for all the residents and was not based upon financial need. Although the stipend increased each year by the predetermined amount, petitioner's responsibilities also increased. The UAMC treated the stipend as "wages" and withheld income tax and F.I.C.A. contributions. In return for his appointment, petitioner agreed to provide medical care for all assigned patients, not to accept fees from patients, and not to engage in outside employment without prior approval. In 1971, petitioner excluded from income $1,800 on the theory that only the last six months of his 1971 stipend was related to his specialty area. The respondent disallowed the exclusion on the ground that petitioner performed services for the hospital and as a result any amounts received were taxable under section 61(a)(1). OPINION Petitioner served the first half of 1971 as a resident physician in general surgery and the second half of the year as a resident physician in otolaryngology at UAMC, Little Rock, Arkansas. It is his contention that $1,800 of the stipend he received for the second half of that year *170 is excludable from income as a scholarship or fellowship grant pursuant to section 117(a)(1). Respondent determined that the stipend was fully taxable under section 61(a)(1). Section 117(a)(1) excludes from gross income any amount received as a "scholarship" or "fellowship grant." If the taxpayer is not a candidate for a degree, section 117(b)(2)(B) limits the exclusion to $300 per month for a maximum of thirty-six months. Before the exclusion applies it must be determined that the payment has the normal characteristics associated with a "scholarship" or "fellowship grant." Reese v. Commissioner,45 T.C. 407, 413 (1966), affd. per curiam 373 F. 2d 742 (4th Cir. 1967). Although the terms are not defined in the statute, section 1.117-3(c), Income Tax Regs., defines a "fellowship grant" as "* * * an amount paid or allowed to, or for the benefit of, an individual to aid him in the pursuit of study or research." Furthermore, section 1.117-4(c), Income Tax Regs., provides that a payment will be considered to be a "scholarship" or "fellowship grant" for the purpose of section 117 if "the primary purpose of the studies or research is to further the education *171 and training of the recipient" and not to compensate him for services rendered. In Bingler v. Johnson,394 U.S. 741, 751 (1969), the Supreme Court approved the definitions contained in these regulations and stated that they agree with the "ordinary understanding of 'scholarships' and 'fellowships' as relatively disinterested, 'no strings' educational grants, with no requirement of any substantial quidproquo from the recipients." The primary purpose standard of section 1.117-4(c), Income Tax Regs., relates to the purpose for which the payments are made and not the purpose for which the hospital is operated. Hembree v. United States,464 F. 2d 1262, 1264 (4th Cir. 1972). The determination of whether the payment satisfies the primary purpose test must be based upon a consideration of the nature of the activities carried on by the taxpayer as a whole. Anderson v. Commissioner,54 T.C. 1547, 1550 (1970). If such a consideration shows the primary purpose is to compensate the taxpayer for services which benefited the hospital, rather than to educate or train him, then the stipend does not represent a scholarship or fellowship. *172 Weinberg v. Commissioner,64 T.C. 771, 776 (1975). Petitioner contends that the primary purpose for the stipend was to aid him in preparing for his medical specialty of otolaryngology. We cannot agree. No doubt petitioner's work as a resident physician provided him with valuable training.But this fact alone is not controlling. As stated in Proskey v. Commissioner,51 T.C. 918, 925 (1969): "Nothing in section 117 requires that an amount paid as compensation for services rendered be treated as a nontaxable fellowship grant, merely because the recipient is learning a trade, business, or profession." A careful consideration of the entire record compels the conclusion that the primary purpose of the stipend was to compensate petitioner for services which benefited UAMC. Upon accepting his otolaryngology residency, petitioner agreed to provide medical care for all assigned patients and perform services traditionally performed only by practicing physicians. To fulfill this agreement, petitioner worked 65 hours per week and was on call every third night. Petitioner's own testimony establishes that, not counting "on call" or research time, 26 of the *173 44 hours he spent at the hospital was devoted to patient care. Of the remaining 21 hours, petitioner spent over 2 full nights each week on call. These services obviously occupied a majority of petitioner's time. Even though petitioner received substantial training, it is clear that his training was incidental to his primary function of caring for patients. See Proskey v. Commissioner,supra at 925. As a result, we cannot find that the primary purpose of the payment was to aid his study. Petitioner's financial arrangements with UAMC are further evidence of the compensatory nature of the payments.The stipend was not based upon financial need, as fellowship grants traditionally are, but rather upon the length of his residency service. Jamieson v. Commissioner,51 T.C. 635, 639 (1969). In addition, the paid vacation leave, fringe benefit eligibility, and wage withholding are all characteristics associated with employee status. Parr v. United States,469 F. 2d 1156 (5th Cir. 1972). Petitioner makes a final legal argument which we must reject. He relies primarily upon Leathers v. United States,352 F. Supp. 1244 (E.D. Ark. 1971), *174 affd. 471 F. 2d 856 (8th Cir. 1972), cert. denied 412 U.S. 932 (1973), as dispositive of the issue before us. In Leathers, a jury concluded that payments received in 1968 and 1969 by two UAMC resident physicians were excludable as scholarship or fellowship grants. On appeal, the Eighth Circuit affirmed noting that whether astipend is a scholarship or fellowship grant is a question of fact. Leathers v. United States,471 F. 2d 856, 858 (8th Cir. 1972). On factual issues, our attention is limited to the entire record before us. The facts found by a jury in a different court for different taxpayers and for different tax years are of no help to petitioner. Unfortunately, petitioner has failed to show this Court the necessary facts upon which we could conclude that the stipend in question was a scholarship or fellowship grant. To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. Statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. The parties agree that the University of Arkansas is an organization described in sec. 501(c)(3) which is exempt from tax under sec. 501(a). It therefore satisfies the condition for exclusion set forth in sec. 117(b)(2)(A)(i)↩.