RACE L. C. KAO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kao v. Commissioner
Docket No. 820-76.
United States Tax Court
T.C. Memo 1977-288; 1977 Tax Ct. Memo LEXIS 154; 36 T.C.M. (CCH) 1143; T.C.M. (RIA) 770288; August 24, 1977, Filed *154 Held, payments received by petitioner were not a scholarship or fellowship grant under sec. 117(a)(1), I.R.C. 1954. Race L. C. Kao, pro se. Gerald V. May, Jr., for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a deficiency of $894.54 in the 1973 income tax of Race L. C. Kao and Lidia W. L. Kao. As a result of concessions by the Kaos, the sole issue is whether payments received by Race L. C. Kao, while serving as a postdoctoral research associate, constitute *155 a scholarship or fellowship grant within the meaning of section 117. [1] If so, he may exclude a portion of the payments from income under section 117(a)(1). FINDINGS OF FACT Some of the facts were stipulated and are found accordingly. Race L. C. Kao and Lidia W. L. Kao, husband and wife, lived in Hershey, Pennsylvania, when they timely filed their 1973 joint income tax return and when Race L. C. Kao (hereinafter petitioner) filed his petition in this case. In 1972, petitioner, a nutrition major, earned his Ph.D degree from the University of Illinois. He thereafter accepted a research associate position offered him by Dr. Morgan, Chairman of the Department of Physiology, College of Medicine, Pennsylvania State University (hereinafter Penn State). Petitioner, currently an Assistant Professor in the Penn State Department of Physiology, assumed his research duties in September 1972. In 1973, petitioner devoted 100 percent of his time to a research project at Penn State that was initiated and supervised by Dr. Morgan. The research grant funding the project was awarded by the now National *156 Heart, Lung and Blood Institute of the National Institutes of Health (hereinafter NIH). The long-term goal of the research project was to describe factors involved in controlling protein turnover in the heart muscle. Although Penn State was the institutional applicant for the grant, Dr. Morgan designed, initiated, and supervised the underlying NIH approved research project. Dr. Morgan was responsible for directing the research on the project to assure that it remained within the general guidelines of the grant. He determined the nature of petitioner's research assignments and then consulted, directed and supervised petitioner's progress on that research. The Penn State annual supplemental grant application filed with the NIH for the period September 1, 1973 through August 31, 1974, listed petitioner as part of the approved project personnel. NIH approves salaries of project personnel only if the person renders personal services to the project. Although NIH awards training and fellowship grants to recipients who do not render personal services, no such provisions exist on research grants. In 1973, petitioner's duties included performing various project-related experiments *157 and co-authoring articles in scientific journals which described the results of the research performed under the grant. Although Dr. Morgan was the supervisor of the project, he devoted only part of his time to it. Petitioner, who devoted 100 percent of his time to the project, performed a substantial portion of the research. In return for his services, petitioner received an annual salary, paid vacation and individual health insurance coverage. Petitioner's salary and fringe benefits were paid from funds budgeted under the research grant. Although fringe benefits were allowable costs on a research grant, they were not paid on fellowship or training grants. Penn State treated petitioner's salary as "wages" and therefore withheld income tax. In 1973, petitioner excluded $3,600 from his income on the theory that the salary received from Penn State was a scholarship or fellowship grant. Respondent disallowed the exclusion on the ground that petitioner received the salary for performing services for Penn State. OPINION In 1973, petitioner worked as a postdoctoral research associate at Penn State. He contends that $3,600 of the salary he received is excludable from income *158 as a scholarship or fellowship grant under section 117(a)(1). Respondent determined that the salary was fully taxable under section 61(a)(1). Where the taxpayer is not a candidate for a degree, section 117 excludes a maximum of $300 per month for 36 months from amounts received as a scholarship or fellowship grant. Payments will be considered a scholarship or fellowship grant if, after considering the taxpayer's activities as a whole, it is determined that the primary purpose of the payments is to further his education and training and not to compensate him for services rendered. Sec. 1.117-3 and 4, Income Tax Regs.; Hembree v. United States,464 F. 2d 1262, 1264 (4th Cir. 1972); Anderson v. Commissioner,54 T.C. 1547, 1550 (1970). Petitioner contends that the primary purpose for the payment of his salary was to further his education and training. We cannot agree. Petitioner's work as a postdoctoral research associate no doubt provided him with the valuable training he needed to prepare himself for an independent position in the scientific community. But this is not controlling where the primary purpose of the payment is to compensate petitioner *159 for services rendered. Proskey v. Commissioner,51 T.C. 918, 925 (1969). In such cases, petitioner's training is merely incidental to the services he renders. We have carefully reviewed the entire record before us and conclude that the primary purpose of petitioner's salary was to enable Penn State to obtain his assistance in meeting its research commitment to NIH. Its primary purpose was not to further petitioner's education and training. An examination of petitioner's activities in 1973 reveals that he devoted 100 percent of his time to the Penn State research project. NIH awarded a research grant to Penn State to support a project requiring substantial research.Since Dr. Morgan only devoted part of his time to the project, petitioner was the primary professional responsible for performing a substantial amount of this research. Petitioner's work on the project was approved by NIH and his salary was paid from funds budgeted under the research grant. Salaries are permissible under NIH research grants only if the recipient renders personal services to the approved research project. Petitioner was assigned research work by Dr. Morgan who then supervised petitioner's *160 progress on the research.This was necessary to confine petitioner's research to the general parameters of the research grant. The conclusion is inescapable; petitioner was paid by Penn State to perform the research necessary to fulfill the terms of the NIH grant and not to advance his knowledge. Under these circumstances we consider his salary taxable compensation. Zolnay v. Commissioner,49 T.C. 389, 397 (1968). Petitioner's employment relationship with Penn State is further evidence of the compensatory nature of his salary. Paid vacation leave, fringe benefit eligibility, wage withholding, and supervised employment are all characteristics associated with employee status. Parr v. United States,469 F. 2d 1156 (5th Cir. 1972); Littman v. Commissioner42 T.C. 503, 510 (1964). We see little difference between petitioner's status and that of a regular employee. Finally, we find no merit in petitioner's contention that even though this was a research grant, NIH singled him out as the recipient of a nontaxable stipend. [2] Nicholas Moriarty, acting chief of research manpower in the NIH division of research grants, testified that *161 although NIH awards stipends on training and fellowship grants, they are not awarded on research grants. Petitioner worked under a research grant. In addition, he testified that no fringe benefits are allowed stipend recipients, yet petitioner received fringe benefits. Accordingly, we hold that petitioner's salary was taxable compensation and not an excludable scholarship or fellowship grant. To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. Statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. Petitioner also contends that even if his salary was paid in return for services it is still excludable under sec. 117. He relies upon sec. 4 of Pub. L. No. 93-483 (1974), 1974-2 C.B. 447, relating to the Armed Forces Health Professions Scholarship Program. Petitioner's contention is without merit. Section 4 of Pub. L. No. 93-483 is a legislative exception to sec. 117↩ that applies to qualified military personnel. Petitioner has made no showing that he is such a qualified military person.