ROBERT DAVID BRETZ AND SARA JO BRETZ, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bretz v. Commissioner
Docket No. 1594-76.
United States Tax Court
T.C. Memo 1978-54; 1978 Tax Ct. Memo LEXIS 463; 37 T.C.M. (CCH) 278; T.C.M. (RIA) 780054; February 13, 1978, Filed Robert D. Bretz and Sara Jo Bretz, pro se. Steven L. Wood, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined a deficiency of $1,002 in petitioners' Federal income tax for the year 1973. Concessions have been made by both parties. The only issue for decision is whether petitioner Robert D. Bretz is entitled to *464 exclude from gross income as a scholarship or fellowship grant under section 117 [1] the amount of $1,800 he received in 1973 while serving as a resident in radiology at a Veterans Administration Hospital. FINDINGS OF FACT Some of the facts are stipulated and so found. Robert D. Bretz (petitioner) and Sara Jo Bretz were legal residents of Long Beach, California, when they filed their petition in this proceeding. They filed their Federal income tax return for 1973 with the Internal Revenue Service Center at Fresno, California. Petitioner graduated from Indiana University School of Medicine in January 1972 with a medical degree. From July 1972 until June 1973 he was an intern at the Veterans Administration Hospital, West Los Angeles, California. On June 2, 1973, he began a 42-month residency in General Radiology at the Veterans Administration (V.A.) Hospital, Long Beach, California. The V.A. Hospital had 13 full time staff radiologists. The General Radiology Residency program there utilized 21 residents, and when the residents were not present the staff radiologists *465 resumed their usual duties. General Radiology residents were expected to be present at the V.A. Hospital during regular working hours. Their schedule included three to four hours of seminars, conferences and formal lectures with the remainder of the day devoted to practical work under staff supervision. From July 1973 through December 1973, the petitioner was in the diagnostic radiology phase of his residency, a specialty not primarily involving patient care service. During this period the petitioner conducted diagnostic examinations on approximately 20 patients per week. These examinations involved injecting x-ray dye for kidney x-ray, performing upper and lower gastrointestinal examinations and administering barium enemas, all of which are procedures performed on patients to generate x-rays. Upon completion of these procedures the petitioner reviewed the resulting x-rays and discussed them with a staff radiologist. Most of this phase of his residency involved reading and analyzing x-rays of V.A. Hospital patients. A hospital physician assigned to actual patient care consulted with the resident or staff radiologist, whoever read a particular x-ray, regarding any questions *466 about the x-ray diagnosis. During November and December 1973 the petitioner was "on call" to provide radiology services beyond regular working hours. Although he was not a degree candidate during 1973, he was expected to prepare and present lectures on various topics to other residents, staff radiologists and interested persons. Petitioner was paid by a fixed schedule of compensation, dependent upon the length of time he was in the V.A. Hospital General Radiology program. During 1973 the V.A. Hospital paid him $7,232.19, from which $1,210.56 was withheld for Federal income tax, $423.12 for FICA and $159.44 for state income tax. Petitioner excluded $1,800 from gross income on his joint 1973 income tax return for the 6-month period during 1973 that he served as a resident at the V.A. Hospital at Long Beach, California. Compensation was based on experience as a resident without regard to financial aid. Petitioner was entitled to annual leave, sick leave, and board examination leave. Additional perquisites while in residency included medical malpractice insurance without cost, health insurance if the petitioner was willing to pay the premiums, and Federal retirement credit for *467 the 42-month residency if he became a staff physician at the hospital upon completion of his residency. OPINION As a general rule, section 117(a) provides that a scholarship or fellowship grant is excludable from gross income. But since the petitioner was not a candidate for a degree, section 117(b)(2)(B) limits the exclusion to an amount equal to $300 times the number of months for which the petitioner received amounts under a scholarship or fellowship grant during the taxable year. Fellowship grants are amounts paid to an individual to enable him to pursue studies or research. Section 1.117-3(c), Income Tax Regs. Scholarships are generally amounts "paid or allowed to or for a benefit of a student, whether an undergraduate or a graduate, to aid such individual in pursuing his studies." Section 1.117-3(a), Income Tax Regs. With respect to individuals who are not candidates for degrees, section 1.117-4(c), Income Tax Regs., excludes from the definition of fellowship or scholarship any amount which "represents either compensation for past, present, or future employment services or represents payment for services which are subject to the * * * supervision of the grantor." The Supreme *468 Court of the United States specifically approved these regulations in Bingler v. Johnson,394 U.S. 741, 751 (1969), where it stated that excludable fellowships are "relatively disinterested, 'no strings' educational grants, with no requirement of any substantial quidproquo from the recipients." Notwithstanding the valuable instruction inherent in medical internship and residency programs, several Courts of Appeals have held that payments to interns and residents under facts and circumstances similar to the payments in this case are compensatory and not excludable from taxable income under section 117. See Birnbaum v. Commissioner, 474 F.2d 1339 (3d Cir. 1973), affg. without published opinion T.C. Memo. 1971-231; Hembree v. United States,464 F.2d 1262 (4th Cir. 1972); Parr v. United States,469 F.2d 1156 (5th Cir. 1972); Wertzberger v. United States,441 F.2d 1166 (8th Cir. 1971); Quast v. United States,428 F.2d 750 (8th Cir. 1970). The same view has been taken by this Court. See Weinberg v. Commissioner,64 T.C. 771, 776-777 (1975) and *469 cases cited therein; and Fisher v. Commissioner,56 T.C. 1201 (1971). In our opinion like treatment must be accorded the payments received by this petitioner. Even though the petitioner received substantial educational benefits in this radiology program, it is clear from the record that he rendered valuable service to the V.A. Hospital. He prepared diagnoses of x-ray films and conducted diagnostic examinations of hospital patients, presented lectures to members of the radiology department, was scheduled to be at the hospital during regular hours, was on call at odd hours, and enjoyed standard employee benefits. See Homer v. Commissioner,T.C. Memo. 1977-66. Petitioner claims that his residency in radiology should be differentiated from ordinary medical residency because radiology does not include primary care of patients and because his activities were in the nature of a student duplicating functions performed by the radiology staff. As further support of student status, he points out that residents are not required to stay at the hospital upon completion of their residency; they are paid a regular stipend during substantial periods of absences *470 from the hospital to other locations; and the number of residents fluctuated and was not dependent upon the numbers of fulltime staff. He also attempts to distinguish V.A. Hospitals by claiming that one of their purposes is to provide medical care and another is to assist in providing an adequate supply of manpower to the nation. We do not find these claims controlling. They are not sufficient to detract from the substantial services rendered by the petitioner to the V.A. Hospital. In Proskey v. Commissioner,51 T.C. 918, 925 (1969), this Court said: * * * Whatever training petitioner received during the years of his residency--and we do not deny that it was substantial--was merely "incidental to and for the purpose of facilitating the raison d'etre of the Hospital, namely, the care of its patients." Ethel M. Bonn,34 T.C. 64, 73 (1960); Woddail v. Commissioner,supra.
Furthermore, petitioner's experience as a radiology resident does not preclude the issue of whether the payments he received were compensation for services rendered. The professional services of a diagnostic radiologist do not involve direct patient care. It appears *471 that petitioner received a normal stipend in return for the same services performed by other resident radiologists and was granted employment privileges consisting of paid sick and vacation time, liability insurance and hospitalization. In addition, the V.A. Hospital withheld the requisite taxes from his payments. There is ample evidence from the facts and testimony in this case to conclude that petitioner's services constituted a "substantial quid pro quo" as described in Bingler v. Johnson,supra.
Petitioner's relationship with the V.A. Hospital had the indicia of employment rather than a fellowship status. The "primary function" of the Veterans Administration Department of Medicine and Surgery is to provide complete hospital and medical services for veterans. 38 U.S.C. § 4101. The administrator of the Veterans Administration is authorized to carry out a program of education to the extent that such a program does not interfere with medical care. 38 U.S.C. § 4101. With respect to medical residencies, the administrator is authorized to appoint qualified persons to such residencies and to prescribe the conditions *472 of their "employment." 38 U.S.C. § 4114. Finally, the amount of compensation received by petitioner was substantial and did not depend on financial need but on level of training. This fact has been considered as a further indicia of employee status. Rosenthal v. Commissioner,63 T.C. 454, 460 (1975). With regard to petitioner's analogy that he should be considered a student under the tax laws because the National Labor Relations Board ruled that certain hospital interns and residents are not employees for collective bargaining purposes, [2] we point out that the classification or definition as an employee under the labor laws is not controlling in tax cases, which are decided under the provisions of the Internal Revenue Code of 1954. On the basis of the evidence in this record, we hold that the payments received by petitioner in 1973 from the V.A. Hospital constituted compensation for present services that were subject to the direction or supervision of the grantor.Consequently, the petitioner is not entitled to exclude any amount as a scholarship or fellowship *473 grant under section 117. To reflect the concessions of the parties and our conclusion on the disputed issue, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. Cedars-Sinai Medical Center,223 N.L.R.B. No. 57↩ (1976).