T.C. Memo. 2017-171

UNITED STATES TAX COURT

TONY PEDREGON LOPEZ AND ANDREA R. LOPEZ PEDREGON,
Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 21842-15, 6794-16.             Filed August 30, 2017.

Tony Pedregon Lopez and Andrea R. Lopez Pedregon, pro sese.

Nathan M. Swingley and Samuel A. Naylor, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, Judge: In these consolidated cases, respondent determined deficiencies in petitioners' Federal income tax of $29,123 and $4,759 and accuracy-related penalties of $5,824.60 and $951.80 for 2011 and 2012, respectively.

**[\*2]**    After concessions,[1] the issues for decision are whether petitioners are:

(1) entitled to loss deductions attributable to expenses related to their child's

pageant activity; and (2) liable for section 6662(a) accuracy-related penalties.[2]

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulation of

facts and the attached exhibits are incorporated by this reference.  Petitioners are

husband and wife.  They resided in Brownsburg, Indiana, when they filed their

petition.

C.P.'s Pageant Winnings

Petitioners have several children, including C.P., who was born in 1999.[3]

At approximately nine years of age, C.P. began competing in beauty pageants in

furtherance of a performing career.  Within each pageant, C.P. entered various

---

[1]  Respondent determined a capital gain instead of a capital loss with respect to the sale of a rental property in 2011, as discussed in the body of this opinion. Petitioners have conceded this issue, though they have not conceded their liability for the accuracy-related penalty to the extent it is attributable to the disallowed capital loss deduction.

[2]  Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[3]  It is the policy of the Court to refer to a minor by her initials.  See Rule 27(a)(3).

[*3] competitions, such as the "Red Carpet", "Photogenic", and "Interview" competitions. In order for C.P. to participate in the pageants at a competitive level, petitioners incurred several thousand dollars of expenses for travel, outfits,[4] and other similar items. In 2011 and 2012 C.P. won several of these events and received cash prizes. These prizes were paid by checks written out to C.P., which were deposited into her college savings account. In 2011 her winnings totaled $1,325; in 2012, $1,850. In 2011 petitioners' pageant expenses totaled $21,732; in 2012, $15,445.

Petitioners hired Frank Bohannon to prepare their Federal income tax returns for 2011 and 2012.[5] In order to prepare petitioners' returns, Mr. Bohannon sent them a tax organizer. When petitioners brought Mr. Bohannon their organizer, they included information substantiating C.P.'s pageant winnings and expenses. According to his understanding of Indiana's child labor laws, Mr. Bohannon believed these amounts were allocable to petitioners rather than to C.P. in her own right. Thus, for 2011 and 2012 Mr. Bohannon prepared Schedules C

---

[4] Whether the outfits were bona fide business expenses is not at issue in these cases.

[5] Petitioners first retained Mr. Bohannon as their tax return preparer in 2008. As of the date of trial, he had prepared tax returns for 49 years.

[*4] for petitioners' tax returns reporting income and expenses from C.P.'s pageant competitions.

Capital Loss

In 2011 petitioners sold a rental property they owned in Michigan. They provided Mr. Bohannon with the applicable depreciation schedule for the property as well as the sale agreement. The depreciation schedule, however, had been prepared by petitioners' previous accountants and included an accounting mistake --it swapped the basis of the property in question for that of a property with a similar address. Mr. Bohannon used this erroneous basis to report the sale of the property on petitioners' 2011 tax return. As a result, petitioners' 2011 return reflected a capital loss of $139,835 when it should have shown a capital gain of $364.[6]

Notice of Deficiency

On June 3, 2015, respondent timely issued a statutory notice of deficiency for the 2011 tax year. Respondent determined a deficiency of $29,123, disallowing deductions for C.P.'s pageant expenses as well as for the capital loss.

---

[6] The record does not reflect that petitioners carried forward this capital loss to 2012. Respondent made no adjustment to petitioners' 2012 return as a result of the disallowance of the capital loss deduction that they claimed for 2011.

[*5] Respondent also determined an accuracy-related penalty under section 6662(a) of $5,824.60.

On December 17, 2015, respondent timely issued a statutory notice of deficiency for the 2012 tax year. Respondent determined a deficiency of $4,759, denying deductions for C.P.'s pageant expenses. Respondent also determined an accuracy-related penalty under section 6662(a) of $951.80.

Petitioners timely petitioned this Court, and a trial was held on September 20, 2016.

OPINION

I. Burden of Proof

As a general rule, the Commissioner's determination of a taxpayer's liability in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Deductions are a matter of legislative grace, and the taxpayer generally bears the burden of proving entitlement to any deduction

**[*6]** claimed.[7]  Rule 142(a); <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992); <u>New Colonial Ice Co. v. Helvering</u>, 292 U.S. 435, 440 (1934).

## II.     Deductions for Child's Pageant Expenses

We first decide whether petitioners may deduct expenses pertaining to C.P.'s pageant activity.  Petitioners argue that they are entitled to include on their returns income and deductions related to C.P.'s pageants.  Respondent contends that under section 73, petitioners cannot treat C.P.'s pageant-related income and expenditures as their own.  For the following reasons, we sustain respondent's determination.

Section 73(a) requires inclusion of "amounts received in respect of the services of a child" in the child's own gross income rather than that of the parents.[8]  "Amounts received in respect of the services of a child" encompass

---

[7]  Sec. 7491(a) provides that if, in any court proceeding, a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed by subtit. A or B and meets other prerequisites, the Secretary shall have the burden of proof with respect to that issue.  <u>Higbee v. Commissioner</u>, 116 T.C. 438, 440-441 (2001).  However, petitioners have neither claimed nor shown that they satisfied the requirements of sec. 7491(a) to shift the burden of proof to respondent.  Accordingly, petitioners bear the burden of proof.  <u>See</u> Rule 142(a).

[8]  Before the enactment of the predecessor of sec. 73, income received in respect of the services of a child was reported by parents who held rights to such services under local law.  H.R. Rept. No. 78-1365, at 21 (1944), 1944 C.B. 821,

(continued...)

**[\*7]** direct and indirect payments for services.  See <u>Allen v. Commissioner</u>, 50 T.C. 466, 476 (1968) (bonus paid to the mother of a minor as an inducement to obtain his services as a professional baseball player includable in minor's gross income), <u>aff'd</u>, 410 F.2d 398 (3d Cir. 1969).  This provision operates to tax a minor child on income she is deemed to have earned.  <u>Fritschle v. Commissioner</u>, 79 T.C. 152, 157 (1982).  To determine the true earner, we look to who had the "ultimate direction and control over the earning" of the income.  <u>Vercio v. Commissioner</u>, 73 T.C. 1246, 1254 (1980); <u>see</u> <u>Fritschle v. Commissioner</u>, 79 T.C. at 158.

Section 73(b) treats all expenditures attributable to amounts includable in the child's gross income solely by reason of section 73(a) as paid or incurred by the child.  This is the case even if a parent made the expenditure.  Sec. 1.73-1(b), Income Tax Regs.  Thus, if we find that C.P.'s pageant winnings constitute "amounts received in respect of the services of a child", then petitioners cannot deduct their pageant-related expenses.  <u>See</u> sec. 73(b).  Any deduction for such expenses would belong to C.P.

---

[8](...continued)
876-877.  However, many States had varying laws and exceptions concerning parental entitlement to the services of a child.  <u>Id.</u>  Congress sought to create uniformity by requiring inclusion of amounts received for a child's services in the child's own gross income.  <u>Id.</u>

**[\*8]**   Prize winnings are generally included in a taxpayer's gross income.  Sec.

74(a).  In particular, prize winnings from satisfying a contest's terms or

requirements are includable as income because they are considered "payment * * *

in return for services rendered" regardless of whether the donor derives an

economic benefit from these services.  Robertson v. United States, 343 U.S. 711,

713-714 (1952).  In the past, we have specifically treated pageant-related

remunerations--even those named as scholarships--as compensation for services.

See Miss Ga. Scholarship Fund, Inc. v. Commissioner, 72 T.C. 267, 269-271

(1979) (holding that a pageant's "scholarship award" was compensation because it

was a payment for the contestant's agreement to perform the requirements of the

pageant contract).

   The record reflects that the gross receipts reported on petitioners' Schedules

C relate solely to C.P.'s pageant winnings.  These winnings were clearly earned by

C.P.[9]  It was C.P. who performed in the pageants, and C.P. was the direct recipient

of the pageant winnings.  See Fritschle v. Commissioner, 79 T.C. at 156.  Because

---

   [9] Petitioners argue that C.P.'s income is not earned income because there is no ongoing relationship between C.P. and the pageants and because the amounts at issue were prize winnings that were not contingent upon the performance of substantial future services.  However, neither of these factors is a requirement for "earned income".  See Fritschle v. Commissioner, 79 T.C. 152, 155-157 (1982); Vercio v. Commissioner, 73 T.C. 1246, 1254 (1980).

**[\*9]** prize winnings earned by C.P. are compensation for her services in the pageant, see Robertson v. United States, 343 U.S. at 713-714, they are includable in her gross income under section 73(a). Accordingly, only C.P. may deduct petitioners' pageant-related expenses. See sec. 73(b). We therefore sustain respondent's disallowance of petitioners' Schedule C loss deductions pertaining to C.P.'s pageant expenses.

III.    Accuracy-Related Penalties

Next, we address whether petitioners are liable for accuracy-related penalties. Respondent argues that petitioners are liable for accuracy-related penalties for tax years 2011 and 2012 under section 6662(a) and (b)(1) and (2) for either negligence or disregard of rules or regulations or for a substantial understatement of income tax.[10] Petitioners argue that they are not liable because they acted with reasonable cause and in good faith.

Pursuant to section 6662(a) and (b)(1), a taxpayer may be liable for a penalty of 20% on the portion of an underpayment of tax attributable to negligence or disregard of rules or regulations. However, a taxpayer is not liable for the accuracy-related penalty under either provision if there was reasonable cause for

_____

[10] While petitioners did not address their liability for the accuracy-related penalties in their petitions, we find that this issue was tried by consent. See Rule 41(b).

**[\*10]** the underpayment and the taxpayer acted in good faith. Sec. 6664(c)(1); sec. 1.6664-4(a), Income Tax Regs.

The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Code, and "disregard" includes any careless, reckless, or intentional disregard of rules or regulations. Sec. 6662(c); sec. 1.6662-3(b)(1) and (2), Income Tax Regs. A disregard of rules or regulations is "careless" if the taxpayer does not exercise reasonable diligence in determining the correctness of a return position that is contrary to a rule or regulation. Sec. 1.6662-3(b)(2), Income Tax Regs. A disregard is "reckless" if the taxpayer makes little or no effort to determine whether a rule or regulation exists, under circumstances which demonstrate a substantial deviation from the standard of conduct that a reasonable person would observe. Id. A disregard is "intentional" if the taxpayer knows of the rule or regulation that is disregarded. Id.

The Commissioner has the burden of production with respect to the accuracy-related penalty. Sec. 7491(c). To meet this burden, the Commissioner must produce sufficient evidence indicating that it is appropriate to impose the penalty. See Higbee v. Commissioner, 116 T.C. at 446. Once the Commissioner meets his burden of production, taxpayers must come forward with persuasive evidence that the Commissioner's determination is incorrect. Rule 142(a); see

**[\*11]** <u>Higbee v. Commissioner</u>, 116 T.C. at 447.  Taxpayers may meet their burden by proving that they acted with reasonable cause and in good faith with respect to the underpayment.  See sec. 6664(c)(1); <u>see also</u> <u>Higbee v. Commissioner</u>, 116 T.C. at 447; sec. 1.6664-4(b)(1), Income Tax Regs.  The decision as to whether the taxpayers acted with reasonable cause and in good faith depends upon all the pertinent facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs.  Generally, the most important factor is the extent of the taxpayers' effort to assess their proper tax liabilities.  <u>Humphrey, Farrington & McClain, P.C. v. Commissioner</u>, T.C. Memo. 2013-23; sec. 1.6664-4(b)(1), Income Tax Regs.

Good-faith reliance on the advice of an independent, competent professional--such as an enrolled agent--as to the tax treatment of an item may constitute reasonable cause.  <u>Neonatology Assocs., P.A. v. Commissioner</u>, 115 T.C. 43, 98-99 (2000), <u>aff'd</u>, 299 F.3d 221 (3d Cir. 2002); sec. 1.6664-4(b), Income Tax Regs.; <u>see</u> <u>Estate of Robinson v. Commissioner</u>, T.C. Memo. 2010-168, slip op. at 10-11; <u>see also</u> <u>United States v. Boyle</u>, 469 U.S. 241, 250 (1985).  This Court has stated that reasonable cause and good faith are present where the record establishes by a preponderance of evidence that:  (1) the taxpayer reasonably believes that the professional upon whom the reliance is placed is a competent tax adviser who has sufficient expertise to justify reliance; (2) the

**[\*12]** taxpayer provides necessary and accurate information to the adviser; and (3) the taxpayer actually relies in good faith on the adviser's judgment.  <u>Neonatology Assocs. P.A. v. Commissioner</u>, 115 T.C. at 99.

Respondent satisfied his burden of production with respect to negligence or disregard of rules or regulations.  Petitioners claimed Schedule C loss deductions to which they were not entitled as well as a capital loss deduction from the sale of property where there was actually a gain.

Petitioners, however, have met their burden of persuasion and demonstrated that they had reasonable cause and acted in good faith with respect to the pageant expense deductions and the capital loss deduction.

While petitioners have some business experience, they are not sophisticated in tax matters.  Petitioners relied on Mr. Bohannon, an enrolled agent with over 40 years of return preparation experience, for many years without incident and continued to trust his explanations and advice.  Accordingly, petitioners established that they reasonably believed that Mr. Bohannon was a competent tax adviser.

Moreover, petitioners provided Mr. Bohannon with all relevant information regarding C.P.'s pageants.  They also provided him with what they believed was the necessary financial information about the 2011 sale of their rental property in

[*13] Michigan.  While the information petitioners gave Mr. Bohannon was erroneous, the errors were attributable to petitioners' former accountant and would not have been readily apparent to petitioners.  We therefore find that petitioners provided Mr. Bohannon with adequate information in good faith and without knowledge of its errors.

We also find petitioners relied on Mr. Bohannon in good faith.  Petitioners have never had any formal training in accounting or taxation and have always relied on the guidance of experts in these areas.  Their retention of Mr. Bohannon is indicative of a good-faith effort to assess their proper tax liability.  Accordingly, we hold that petitioners are not liable for any accuracy-related penalties for the years in issue.

In reaching all of our holdings herein, we have considered all arguments made by the parties, and to the extent not mentioned above, we find them to be irrelevant or without merit.

Decisions will be entered for respondent as to the deficiencies and for petitioners as to the accuracy-related penalties under section 6662(a).